UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X
SOLOMON SINGER,

                    Plaintiff,

          -against-

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

                    Defendant.
-------------------------------------------------------X

**REPORT AND RECOMMENDATION**
19-CV-5992 (EK) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

Plaintiff Solomon Singer ("Singer") commenced this quiet title action against Defendant Federal National Mortgage Association ("Fannie Mae") in 2019 to cancel a mortgage loan encumbering a property located at 331 Walsh Court in Brooklyn, New York (the "Property"). (*See* Notice of Removal, ECF No. 1, ¶¶ 2, 13–17; State Court Amended Summons and Complaint ("Am. Compl."), ECF No. 1-1, ¶¶ 1–6.) Singer contends that, pursuant to Article 15 of the New York Real Property Actions and Proceedings Law ("RPAPL"), N.Y. Real Prop. Acts. Law §§ 1501 *et seq.*, the statute of limitations governing Fannie Mae's ability to foreclose on the Property expired after Fannie Mae's predecessor in interest accelerated the debt through foreclosure proceedings. (Am. Compl., ECF No. 1-1, ¶¶ 17–20.) As a result, Singer claims he is entitled to a judgment canceling and discharging the mortgage. (*Id.* ¶¶ 21–23.)

Currently pending before the Court are Singer's motion for summary judgment and motion to strike Fannie Mae's reply, which the Honorable Eric Komitee referred to the undersigned Magistrate Judge for a report and recommendation.[1] (Motion for

---

[1] Subsequent to Judge Komitee's referral order, the parties continued filing submissions to the Court. (*See* ECF Nos. 48–57.) Notably, on May 17, 2022, Fannie Mae requested a pre-

Summary Judgment ("Pl.'s Mot."), ECF No. 41; Pl.'s Motion to Strike ("Mot. to Strike"), ECF No. 44; Apr. 12, 2022 ECF Referral Order.)

For the reasons discussed below, the Court respectfully recommends denying Singer's motion to strike and granting Singer's motion for summary judgment.

## BACKGROUND

### I.  Factual Background[2]

### A.  Singer's 2006 Mortgage Loan and Subsequent Default

On July 12, 2006, Singer executed a note (the "Note") and mortgage (the "Mortgage") against the Property in the amount of $417,000, in favor of Fairmont Funding, Ltd., and the Mortgage was recorded in the King's County Clerk's Office on August 18, 2006. (Pl.'s Local Civil Rule 56.1 Statement ("Pl.'s 56.1"), ECF No. 41-2, ¶¶ 1–2; Def.'s Local Civil Rule 56.1 Statement ("Def.'s 56.1"), ECF No. 42-3, ¶¶ 1–2; Note, ECF No. 42-4; Mortgage, ECF No. 41-6; *see also* Deed, ECF No. 41-21.)[3] Pursuant to the Note, Singer was required make monthly payments on the mortgage loan through August 1, 2036. (Note, ECF No. 42-4.)

---

motion conference in anticipation of filing a motion to dismiss or stay the instant action pursuant to the *Colorado River* doctrine. (*See* Def.'s Pre-Mot. Conf. Letter, ECF No. 49.) On July 19, 2022, Judge Komitee denied Fannie Mae's motion, as well as its subsequent motion to vacate, following the New York State Supreme Court's denial of Fannie Mae's motion to restore foreclosure proceedings commenced in 2009. (*See* Pl.'s July 14, 2022 Letter, ECF No. 55; July 7, 2022 State Court Order, ECF No. 55-1; July 19, 2022 ECF Order; Def.'s Mot. to Vacate, ECF No. 56; July 22, 2022 Order, ECF No. 58.)

[2] The following material facts are taken from the evidence submitted by the parties in connection with Singer's motion and are undisputed unless otherwise noted.

[3] The Court notes Fannie Mae's "general objection" to Singer's 56.1 Statement and its request that the Court "disregard and/or strike" the statement because "it is argumentative, riddled with legal conclusions and contains assertions without specific citations to the record." (Def.'s 56.1, ECF No. 42-3, at 1–3.) To the extent Singer's 56.1 Statement contravenes the Federal Rules of Civil Procedure or the Local Civil Rules, the Court has disregarded such portions.

On November 17, 2009, the Mortgage was assigned to OneWest Bank, FSB ("OneWest").[4] (Pl.'s 56.1, ECF No. 41-2, ¶ 3; Mortgage Assignment, ECF No. 41-7, at 2–5; Declaration of Adam M. Swanson ("Swanson Decl."), ECF No. 42-1, ¶ 9.) In July 2009, Singer defaulted on his loan. (*See* Def.'s Local Civil Rule 56.1 Counterstatement[5] ("Def.'s 56.1 Counterstatement"), ECF No. 42-3, ¶ 3; Affidavit of A.J. Loll ("Loll Aff."), ECF No. 42-2, ¶ 13.)

**B. OneWest's Foreclosure Actions in State Court**

On December 11, 2009, OneWest initiated a foreclosure action against Singer in the New York Supreme Court, Kings County, Index No. 31653/2009 (the "2009 Action"). (Pl.'s 56.1, ECF No. 41-2, ¶ 4; Def.'s 56.1, ECF No. 42-3, ¶ 4; 2009 Summons and Complaint, ECF No. 41-8.) As part of that action, OneWest "elect[ed] to call due the entire amount secured by the mortgage." (2009 Summons and Complaint, ECF No. 41-8, ¶ 7.) On August 14, 2012, the state court directed the dismissal of the 2009 Action after OneWest failed to meet a court-imposed deadline. (*See* Pl.'s 56.1, ECF No. 41-2, ¶ 6; Def.'s 56.1, ECF No. 42-3, ¶ 6; Aug. 14, 2012 State Court Order, ECF No. 41-10.)

On January 30, 2013, OneWest commenced a second foreclosure action in the New York State Supreme Court, Kings County, Index No. 1807/2013 (the "2013 Action"). (Pl.'s 56.1, ECF No. 41-2, ¶ 7; Def.'s 56.1, ECF No. 42-3, ¶ 7; 2013 Summons and Complaint, ECF No. 41-11.) Once again, OneWest "elect[ed] to call due the entire amount secured by the mortgage[]." (2013 Summons and Complaint, ECF No. 41-11,

---

[4] Thereafter, on September 12, 2013, the Mortgage was assigned to Ocwen Loan Servicing LLC ("Ocwen"). (Pl.'s 56.1, ECF No. 41-2, ¶ 9; Def.'s 56.1, ECF No. 42-3, ¶ 9; Mortgage Assignment, ECF No. 41-7, at 6–10; Declaration of Adam M. Swanson ("Swanson Decl."), ECF No. 42-1, ¶ 9.) On August 10, 2015, the Mortgage was assigned to its current holder, Fannie Mae. (Pl.'s 56.1, ECF No. 41-2, ¶ 11; Def.'s 56.1, ECF No. 42-3, ¶ 11; Def.'s 56.1 Counterstatement, ECF No. 42-3, ¶ 2; Affidavit of A.J. Loll, ECF No. 42-2, ¶ 12; Mortgage Assignment, ECF No. 41-7, at 10–13; Swanson Decl., ECF No. 42-1, ¶ 9.)

[5] Fannie Mae's 56.1 Counterstatement begins on page 13 of the document.

¶ 11.) On January 8, 2015, the state court dismissed the 2013 Action following OneWest's failure to appear as directed by the court. (Pl.'s 56.1, ECF No. 41-2, ¶ 8; Def.'s 56.1, ECF No. 42-3, ¶ 8; Jan. 8, 2015 State Court Order, ECF No. 41-12.)

OneWest then moved to vacate the dismissal of the 2013 Action, which the court granted on August 12, 2015. (Pl.'s 56.1, ECF No. 41-2, ¶ 10; Def.'s 56.1, ECF No. 42-3, ¶ 10; Aug. 12, 2015 State Court Order, ECF No. 41-13.) Singer appealed the vacatur of the dismissal order, and on August 16, 2017, the New York Supreme Court Appellate Division, Second Department, reversed the vacatur. (Pl.'s 56.1, ECF No. 41-2, ¶¶ 10, 12; Def.'s 56.1, ECF No. 42-3, ¶ 12; Aug. 16, 2017 State Court Decision and Order, ECF No. 41-14.)

In 2021, subsequent to Singer's filing the instant action, Fannie Mae filed a motion to vacate the state court's dismissal of the 2009 Action. (*See* Def.'s 56.1 Counterstatement, ECF No. 42-3, ¶ 7; Swanson Decl., ECF No. 42-1, ¶ 25; Def.'s State Court Mot., ECF No. 42-30; Def.'s Pre-Mot. Conf. Letter, ECF No. 49, at 2–3; Def.'s Mot. to Stay, ECF No. 50; State Court Docket, ECF No. 50-1.) In an order dated July 7, 2022, the Honorable Lawrence Knipel denied Fannie Mae's motion to vacate the state court's 2012 dismissal of the 2009 Action, noting that it had been dismissed "[n]early 10 years ago," and that a "subsequently commenced action was likewise dismissed." (July 7, 2022 State Court Order, ECF No. 55-1.) Accordingly, Judge Knipel denied the motion to vacate "on both law of the case [and] la[]ches grounds." (*Id.*) On July 20, 2022, Fannie Mae appealed Judge Knipel's order. (July 20, 2022 State Court Appeal, ECF No. 56-1.)

## C. Templer Action

In opposition to Singer's motion, Fannie Mae argues that Singer's statements and court filings related to a separate state court action are relevant to the Court's determination of whether Singer revived his mortgage debt. (*See* Def.'s Mem. in Opp'n

to Mot. ("Def.'s Mem."), ECF No. 42, at 6–7, 11–15.) Accordingly, the Court includes the following background on said action.

On June 20, 2018, David Templer ("Templer") commenced a special proceeding against Singer in the New York Supreme Court, Kings County, Index No. 512679/2018 (the "Templer Action"), seeking to enforce a money judgment by directing the sale of the Property. (Def.'s 56.1 Counterstatement, ECF No. 42-3, ¶ 15; Templer Petition, ECF No. 42-41.) On September 27, 2018, Singer filed a motion to dismiss Templer's petition and attached the following as exhibits: a copy of the Mortgage, a "payoff" quote, and an affirmation attesting that he has "a mortgage against the property and the amount owed to the lender far exceeds the value of the property." (Pl.'s Templer Aff., ECF No. 42-45, ¶ 4; Pl.'s Mot. to Dismiss Templer Action, ECF No. 42-44; *see also* Def.'s 56.1 Counterstatement, ECF No. 42-3, ¶¶ 19–20, 22–23.)

In his affirmation, Singer averred, among other things, that, "[t]he petition fails to set forth how the Petitioner's judgment can be satisfied out of the sale of [Singer's] home. Since, just looking at the numbers alone, it is clear that there is no surplus available, after [Singer's] mortgage is paid, which can feasibly satisfy the judgment." (Pl.'s Templer Aff., ECF No. 42-45, ¶ 6.) Further, Singer's attorney in the Templer Action filed an affirmation in October 2018, arguing that the Property is not "dischargeable," in part, because "if [Singer] decides that he wants to apply for modification or workout a settlement with the bank, then it[']s his choice to do so and only his choice to seek that relief. Petitioner cannot interfere with [Singer]'s right to settle with the bank." (Zeltser Aff., ECF No. 42-47, ¶ 9; *see also* Def.'s 56.1 Counterstatement, ECF No. 42-3, ¶¶ 24–25.)

### D.  Chaim Wolmark Declaration of Restriction

As discussed *infra*, Fannie Mae also argues that there are factual questions surrounding Singer's ownership interests in the Property and whether all necessary

parties have been joined in this action, due to an agreement between Singer and non-party Chaim Wolmark. (*See* Def.'s Mem., ECF No. 42, at 2–3, 16–20.) Thus, the Court notes — and Singer does not deny — that on February 22, 2016, Singer executed and recorded a declaration of restriction (the "Wolmark Declaration") involving the Property, stating in part:

> [Singer] shall not sell, mortgage, assign, lease, convey, transfer, encumber, pledge, hypothecate or otherwise take any action creating a security interest in the [Property] without the written consent of Chaim Wolmark . . . (herein forth referred to as the "Purchaser"). Any such transfer, assignment or encumbrance, without written consent of the Purchaser shall be null and void and no force and effect.

(Declaration of Restriction, ECF No. 42-19, at 3; *see also* Def.'s 56.1 Counterstatement, ECF No. 42-3, ¶ 13; Deposition of Solomon Singer ("Pl.'s Dep."), ECF No. 42-50, at 44–58; Deposition of Chaim Wolmark ("Wolmark Dep."), ECF No. 42-51, at 22–23, 41–43.)

## II.   Procedural History

Singer commenced this action on or about August 29, 2019, in New York Supreme Court, Kings County, Index No. 519200/2019. (*See* Notice of Removal, ECF No. 1, ¶ 2; Am. Compl., ECF No. 1-1.) Fannie Mae removed the action to federal court on October 24, 2019, and thereafter filed an answer asserting thirteen affirmative defenses and five counterclaims. (*See* Notice of Removal, ECF No. 1; Answer and Counterclaims, ECF No. 6; *see also* Pl.'s Answer to Counterclaims, ECF No. 9.) On March 11, 2021, and March 16, 2021, respectively, Singer and Fannie Mae each filed motions for a pre-motion conference in anticipation of moving for summary judgment. (Pl.'s Mot. for Pre-Mot. Conference, ECF No. 34; Def.'s Mot. for Pre-Mot. Conference, ECF No. 35.) On April 21, 2021, Judge Komitee approved the parties' proposed briefing schedule, and on August 30, 2021, following a brief extension, Singer filed his motion for summary judgment. (*See* Apr. 21, 2021 ECF Order; July 1, 2021 ECF Order; Pl.'s Mot.,

ECF No. 41; Pl.'s Mem. in Supp. of Mot. ("Pl.'s Mem."), ECF No. 41-1; Def.'s Mem., ECF No. 42; Pl.'s Reply in Supp. of Mot. ("Pl.'s Reply"), ECF No. 40.)

Although Fannie Mae did not ultimately cross-move for summary judgment, it filed a reply "in further opposition" to Singer's motion on September 7, 2021, pursuant to the briefing schedule set forth in Judge Komitee's July 1, 2021 order, which Singer subsequently moved to strike.[6] (*See* July 1, 2021 ECF Order; Def.'s Reply in Opp'n to Mot. ("Def.'s Reply"), ECF No. 43; Mot. to Strike, ECF No. 44; Def.'s Opp'n to Mot. to Strike, ECF No. 45.)

On April 12, 2022, Judge Komitee referred Singer's motion for summary judgment and motion to strike to the undersigned Magistrate Judge for a report and recommendation. (Apr. 12, 2022 ECF Referral Order.) Soon after, the parties filed additional letters regarding (1) Singer's contention that Fannie Mae had conceded in a different judicial forum that the relevant statute of limitations had expired (*see* ECF Nos. 48, 50, 52); and (2) Fannie Mae's efforts to stay or dismiss this case pending the New York State Supreme Court's disposition of Fannie Mae's motion to restore the 2009 Action (*see* ECF Nos. 49, 50, 51, 53, 55). Ultimately, Judge Komitee denied Fannie Mae's motion to dismiss or stay the current action, in light of the New York Supreme Court's order denying Fannie Mae's motion to vacate its dismissal of the 2009 Action. (*See* July 19, 2022 ECF Order; *see also* July 22, 2022 Order, ECF No. 58 (denying Fannie Mae's motion to vacate the July 19, 2022 order).)

---

[6] In addition, on September 21, 2021, Fannie Mae filed a letter of supplemental authority, to which Singer responded on September 30, 2021. (*See* Def.'s Sept. 21, 2021 Letter, ECF No. 46; Pl.'s Sept. 30, 2021 Letter, ECF No. 47.) Singer also filed letter of supplemental authority on June 2, 2022. (*See* Pl.'s June 2, 2022 Letter, ECF No. 54.)

# DISCUSSION

## I.  Legal Standards

### A.  Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Darnell v. Pineiro*, 849 F.3d 17, 22 (2d Cir. 2017). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Further, a factual dispute is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). "Put another way, summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-movant." *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021) (alterations and quotation marks omitted).

The movant "'bears the burden of demonstrat[ing] the absence of a genuine issue of material fact.'" *Nick's Garage, Inc.*, 875 F.3d at 114 (alteration in original) (quoting *Celotex Corp.*, 477 U.S. at 323). Once the moving party has satisfied their burden, "'the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Brizzi v. Utica Mut. Ins. Co.*, 529 F. Supp. 3d 44, 51 (E.D.N.Y. 2021) (emphasis in original) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party].");  *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 78 (E.D.N.Y. 2019). However, summary

judgment must be denied "if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In addition, Rule 56(c) provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

## B. Article 15 of the Real Property Actions and Proceedings Law

"Article 15 of New York's RPAPL codifies the common law action to quiet title." *53rd St., LLC v. U.S. Bank Nat'l Ass'n*, 8 F.4th 74, 77 (2d Cir. 2021); *see also Costa v. Deutsche Bank Nat'l Tr. Co. for GSR Mortg. Loan Tr. 2006-OA1*, 247 F. Supp. 3d 329, 337–38 (S.D.N.Y. 2017); *Caliguri v. Pentagon Fed. Credit Union*, 91 N.Y.S.3d 481, 483 (N.Y. App. Div. 2d Dep't 2019) ("RPAPL 1501(4) provides a means by which a party may clear a cloud on title represented by a stale mortgage, where the applicable statute of limitation for the commencement of an action to foreclose a mortgage . . . has expired." (quotation marks omitted)). Section 1501(4) of the RPAPL provides that:

> Where the period allowed by the applicable statute of limitation for the commencement of an action to foreclose a mortgage . . . has expired, any person having an estate or interest in the real property subject to such encumbrance may maintain an action against any other person or persons, known or unknown, . . . to secure the cancellation and discharge of record of such encumbrance, and to adjudge the estate or interest of the plaintiff in such real property to be free therefrom; provided, however, that no such action shall be maintainable in any case where the mortgagee, . . . or the successor of either of them shall be in possession of the affected real property at the time of the commencement of the action.

RPAPL § 1501(4). Accordingly, where, as here, a party seeks to discharge a mortgage pursuant to § 1501(4), they must demonstrate: "'1) that [they] ha[ve] an estate or interest

in the real property; 2) that all necessary parties to the action were joined; and 3) that the applicable statute of limitations for commencing a foreclosure action has expired without the commencement of a foreclosure action.'" *53rd St., LLC*, 8 F.4th at 78 (quoting *Gustavia Home LLC v. Env't Control Bd.*, No. 18-CV-6485 (MKB) (CLP), 2019 WL 4359549, at *5 (E.D.N.Y. Aug. 21, 2019), *report and recommendation adopted*, No. 18-CV-6485 (MKB) (CLP), 2019 WL 4346012 (E.D.N.Y. Sept. 11, 2019)); *see also Yadegar v. Deutsche Bank Nat'l Tr. Co.*, 83 N.Y.S.3d 173, 174 (N.Y. App. Div. 2d Dep't 2018).

The statute of limitations for a foreclosure action under New York law is six years. *Lubonty v. U.S. Bank Nat'l Ass'n*, 34 N.Y.3d 250, 261 (2019) (citing N.Y. C.P.L.R. § 213(4)); *see also 1042 II Realty, Inc. v. PHH Mortg. Corp.*, No. 21-CV-2761 (VEC), 2022 WL 280882, at *2 (S.D.N.Y. Jan. 31, 2022). "For a mortgage payable in installments, 'separate causes of action accrue for each installment that is not paid, and the statute of limitations begins to run, on the date each installment becomes due.'" *53rd St., LLC*, 8 F.4th at 78 (alteration omitted) (quoting *Wells Fargo Bank, N.A. v. Burke*, 943 N.Y.S.2d 540 (N.Y. App. Div. 2d Dep't 2012)). However, "'even if a mortgage is payable in installments, once a mortgage debt is accelerated, the entire amount is due and the Statute of Limitations begins to run on the entire debt.'" *Id.* (quoting *Ditmid Holdings, LLC v. JPMorgan Chase Bank, N.A.*, 120 N.Y.S.3d 393 (N.Y. App. Div. 2d Dep't 2020)); *see also Gustavia Home, LLC*, 362 F. Supp. 3d at 86.

## II.  Analysis

Singer contends that there are no genuine disputes of fact over (1) whether the relevant statute of limitations has expired following OneWest's acceleration of the Mortgage in 2009 (and again in 2013); (2) whether he is the owner of the property; or (3) whether all interested parties have been named in the action. (*See generally* Pl.'s Mem., ECF No. 41-1; Pl.'s Reply, ECF No. 40.) Fannie Mae, on the other hand, argues

that Singer's motion should be denied because there are genuine disputes of fact as to (1) Singer's ownership interest in the Property and that of Chaim Wolmark (Def.'s Mem., ECF No. 42, at 16–20); (2) whether the Mortgage was validly accelerated (*id.* at 20–23); (3) whether Singer revived the statute of limitations by acknowledging the debt and evincing an intention to pay (*id.* at 6–8, 10–16); and (4) whether the 2009 Action is still pending following Fannie Mae's recent efforts in state court (*id.* at 23–25).

For the reasons contained herein, the Court finds that Singer has met his burden for summary judgment on his quiet title claim pursuant to RPAPL § 1501(4), and therefore respectfully recommends that Plaintiff's motion be granted. In addition, the Court recommends that Singer's motion to strike (ECF No. 44) be denied.

### A. Singer's Motion to Strike

As an initial matter, the Court addresses Singer's motion to strike Fannie Mae's reply in further support of its opposition to Singer's motion for summary judgment. The decision whether to strike a reply, sur-reply, or portions of such filings, is within the trial court's discretion. *See Sec. & Exch. Comm'n v. Xia*, No. 21-CV-5350 (PKC) (RER), 2022 WL 2784871, at *1 (E.D.N.Y. July 15, 2022); *Madorskaya v. Frontline Asset Strategies, LLC*, No. 19-CV-895 (PKC) (RER), 2021 WL 3884177, at *18 (E.D.N.Y. Aug. 31, 2021). "When resolving a motion to strike, it is appropriate to use 'a scalpel, not a butcher knife.'" *Nachimovsky v. Nike, Inc.*, No. 19-CV-2120 (ILG) (RER), 2022 WL 943421, at *5 (E.D.N.Y. Mar. 29, 2022) (quoting *Pharmacy, Inc. v. Am. Pharm. Partners*, No. 05-CV-776, 2007 WL 2728898, at *1 (E.D.N.Y. Sept. 14, 2007)). Singer argues that "because [Fannie Mae] did not cross-move for summary judgment, [Fannie Mae] had no automatic right to a Sur-Reply," and further, that Fannie Mae's filing should be stricken because it did not seek leave of Court or consult with Singer's counsel before filing its "reply in further opposition." (Mot. to Strike, ECF No. 44, at 1–2.) While the Court agrees with Singer

that Fannie Mae's "sur-reply" (ECF No. 43) appears to be in tension with Judge

Komitee's July 1, 2021 scheduling order, the briefing itself does not raise new

substantive arguments or submit new evidentiary information necessary for the Court's

recommendation as to Singer's motion for summary judgment.

Accordingly, the Court respectfully recommends denying Singer's motion to

strike in an exercise of discretion, as Fannie Mae's briefing does not prejudice Singer.

*See Nachimovsky*, 2022 WL 943421, at *6 (denying motion to strike and "simply

disregard[ing] those portions of the affidavit that consist of legal conclusions and

irrelevant material"); *Madorskaya*, 2021 WL 3884177, at *18 (denying motion to strike

where, "[e]ven if the Court were to consider [the briefing], the disposition of

Defendant's summary judgment motion would not change"); *Neary v. Weichert*, 489 F.

Supp. 3d 55, 63 (E.D.N.Y. 2020) (same).

### B. Singer's Interest in the Property

Turning to Singer's motion for summary judgment pursuant to RPAPL § 1501(4),

the Court first discusses Fannie Mae's argument that the Wolmark Declaration "casts an

ambiguity-filled cloud upon Singer's ownership interest in the Property that cannot be

resolved on summary judgment." (Def.'s Mem., ECF No. 42, at 17.) It does not.

Singer has established, and Fannie Mae does not dispute, that on July 12, 2006,

Singer acquired the Property by deed, and that the deed was recorded on August 18,

2006. (Pl.'s 56.1, ECF No. 41-2, ¶ 20; Def.'s 56.1, ECF No. 42-3, ¶ 20; Deed, ECF No. 41-

21.) Instead, Fannie Mae argues that there is a genuine issue for trial as to whether

Singer is the *current* owner in possession of the Property, based on the Wolmark

Declaration that Singer executed on February 22, 2016, as well as Singer and Wolmark's

deposition testimony. (*See* Def.'s Mem., ECF No. 42, at 16–19; Declaration of Restriction,

ECF No. 42-19.) However, the Wolmark Declaration states that Singer "is the fee

owner" of the Property, and that the document is meant to "set forth . . . his *intention* with reference to the [Property]." (Declaration of Restriction, ECF No. 42-19, at 3 (emphasis added).) Further, the second paragraph states that the agreement grants Wolmark "a right of first refusal *when* the [Property] is offered for sale." (*Id.* ¶ 2 (emphasis added).) Fannie Mae has not offered any evidence from which a reasonable juror could find that Singer sold the Property or otherwise lost possession; or as Fannie Mae avers, that the declaration "prohibits Singer from enjoying any rights in this Property." (Def.'s Mem., ECF No. 42, at 18–19.)

At most, the Wolmark Declaration provides a mechanism by which Mr. Wolmark would maintain a right of first refusal if and when Singer sells the Property.[7] Even if the declaration entitled Mr. Wolmark to that much, such a restriction would not divest Singer of *his* interest in the Property. *See, e.g., Riseboro Cmty. P'ship Inc. v. SunAmerica Hous. Fund 682*, 482 F. Supp. 3d 31, 36 (E.D.N.Y. 2020) (observing that a right of first refusal "is a legal term of art with a well-established definition in New York" that "does not give its holder the power to compel an unwilling owner to sell," but rather "restricts the power of one party to sell without first making an offer of purchase to the other party upon the happening of a contingency: the owner's decision to sell to a third party." (quotation marks omitted) (citing *Metro. Transp. Auth. v. Bruken Realty Corp.*, 67 N.Y.2d 156, 163 (1986); *LIN Broadcasting Corp. v. Metromedia Inc.*, 74 N.Y.2d 54, 60 (1989))).

---

[7] Nothing in Singer or Wolmark's deposition testimony undermines such a conclusion. (*See* Pl.'s Dep., ECF No. 42-50, at 44–58; Wolmark Dep., ECF No. 42-51, at 22–23, 41–45.) The Court, of course, does not condone the fact that Mr. Wolmark reviewed Singer's deposition transcript ahead of his own deposition and was in communication with Singer during said deposition. (*See* Wolmark Dep., ECF No. 42-51, at 22–23, 47–50.) However, contrary to Fannie Mae's contention, this does not, without more, genuinely raise the issue of whether "the Declaration could be covering for a prior sale and an unrecorded deed of the Property to Wolmark." (Def.'s Mem., ECF No. 42, at 18.)

As discussed above, "[a] successful Article 15 claim must set forth facts showing . . . the nature of the plaintiff's interest in the real property and the source of this interest." *Costa*, 247 F. Supp. 3d at 338. Here, the Court recommends finding that Singer has met his burden and that Fannie Mae has failed to establish a genuine dispute over whether Singer is in possession, or has an interest in, the Property.

### C.  Necessary Parties to the Action

The Court next addresses Fannie Mae's assertion that summary judgment should be denied because there is a question as to whether all necessary parties to the action have been joined. (Def.'s Mem., ECF No. 42, at 19–20.) Fannie Mae is correct that, in some situations, a "'nonparty purchaser of the subject property [has] an interest in the property as contemplated by RPAPL § 1501(4) and, in this regard, is a necessary party to this action, since his or her interest in the property would be affected by any judgment rendered herein.'" *Gustavia Home LLC*, 2019 WL 4359549, at *5 (emphasis omitted) (quoting *Guccione v. Est. of Guccione*, 923 N.Y.S.2d 591, 593 (N.Y. App. Div. 2d Dep't 2011)). However, that is not the case here.

As explained above in relation to Singer's interest in the Property, Fannie Mae has not raised a genuine issue of fact as to whether Wolmark qualifies as a "nonparty purchaser" requiring that he be joined in this action. *See* RPAPL § 1511. Even assuming Wolmark has a valid right of first refusal based on the Wolmark Declaration, such right is conditional. Accordingly, as the Honorable Sanket J. Bulsara observed in denying Fannie Mae's motion to compel in this case, it is "hard to see why [Wolmark] is a 'necessary party,'" as any interest on the part of Wolmark would not be affected by the

14

outcome of this action.[8] (Jan. 31, 2021 Order, ECF No. 33, at 2.) Therefore, the Court recommends finding that Singer has established that all necessary parties, i.e., he and the current noteholder, Fannie Mae, have been joined in the litigation.

### D. Statute of Limitations

The Court next turns to the issue of whether the applicable statute of limitations expired prior to Singer's filing of this lawsuit. Fannie Mae argues that Singer has failed to meet his burden for summary judgment because there are material issues of fact with respect to (1) whether the mortgage debt was validly accelerated to trigger the statute of limitations; (2) whether Singer renewed the statute of limitations following the commencement of foreclosure proceedings; and (3) whether the current status of the 2009 Action precludes a finding that the statute of limitations expired. (Def.'s Mem., ECF No. 42, at 10–16, 20–25.)

#### 1. OneWest's Actions Concerning the Acceleration of the Mortgage

"[T]o be valid, an election to accelerate must be made by an 'unequivocal overt act' that discloses the noteholder's choice, such as the filing of a verified complaint seeking foreclosure and containing a sworn statement that the noteholder is demanding repayment of the entire outstanding debt." *Freedom Mortg. Corp. v. Engel*, 37 N.Y.3d 1, 22 (2021) (citation omitted); *see also 53rd St., LLC*, 8 F.4th at 77; *Gustavia Home, LLC*, 362 F.

---

[8] Notably, the language in the Wolmark Declaration appears to only restrict Singer's actions with respect to the Property. (*See* Declaration of Restriction, ECF No. 42-19.) Thus, even if the Property could be foreclosed on, that would not necessarily implicate Wolmark, as a foreclosure sale would not qualify as an action taken by Singer. *See Huntington Nat. Bank v. Cornelius*, 914 N.Y.S.2d 327, 330–31 (N.Y. App. Div. 3d Dep't 2010) (finding that where the right of first refusal requires a "volitional act of the owner," a foreclosure sale would not trigger such right); *cf. Peters v. Smolian*, 12 N.Y.3d 824, 831 n.1, 832–33 (N.Y. Sup. Ct. Suffolk Cnty. 2015), *judgment entered*, 2015 WL 5475091, at *1 (N.Y. Sup. Ct. Suffolk Cnty. July 15, 2015), *aff'd*, 63 N.Y.S.3d 436 (N.Y. App. Div. 2d Dep't 2017).

Supp. 3d at 87; *Costa*, 247 F. Supp. 3d at 340. In addition, an "election to accelerate must be made in accordance with the terms of the note and mortgage." *Engel*, 37 N.Y.3d at 22.

On this latter point, Fannie Mae contends that because Singer has not established that a "legally proper notice of default letter was given in connection with the 2009 Action," OneWest's filing of the 2009 Action did not constitute a "valid acceleration." (Def.'s Mem., ECF No. 42, at 20–23.) More specifically, Fannie Mae asserts that Singer has failed to show that the notice of default complied with the terms of the Mortgage, and namely, that it was sent in the manner prescribed in paragraphs 15 and 22.[9] (*Id.*; *see also* Mortgage, ECF No. 41-6, ¶¶ 15, 22.) Further, Fannie Mae argues that to the extent the notice of default Singer submitted "is a public record that is being offered, the Court can take notice that it was filed with the state court, but not that it was actually mailed or delivered to the address or addressee and, therefore 'given' under the terms of the mortgage."[10] (Def.'s Mem., ECF No. 42, at 22; *see also* Notice of Default, ECF No. 41-9.)

---

[9] Paragraph 22 of the Mortgage provides that the lender is permitted to "require Immediate Payment in Full . . . only if" the lender sent Singer a notice stating: (1) that Singer defaulted; (2) the action Singer would need to take to cure the default by a date at least 30 days from when notice was given; and (3) that failure to correct the default could lead to acceleration of the debt. (Mortgage, ECF No. 41-6, ¶ 22.) Paragraph 22 further states that the notice must be sent in accordance with paragraph 15 of the Mortgage, which in turn, mandates that the notice be in writing, and that it "is considered given to [Singer] when mailed by first class mail or when actually delivered to [Singer's] notice address if sent by other means." (*Id.* ¶¶ 15, 22.) The notice of default here is dated July 30, 2009, includes a cover page with a square in the upper right corner stating, "PRESORT First-Class Mail U.S. Postage and Fees Paid WSO," indicates that the letter was "Sent Via Certified Mail" with a corresponding tracking number, notes that Singer had until August 30, 2009 to cure his default and how much he would have to pay to do so, and includes an acceleration warning. (July 30, 2009 Notice of Default, ECF No. 41-9, at 2–4.)

[10] Specifically, Fannie Mae asserts that the notice was sent, if at all, by certified mail, as opposed to first class mail, and therefore, would have only been "considered given" when "actually delivered" to Singer. (Def.'s Mem., ECF No. 42, at 22–23 (citing Mortgage, ECF No. 41-6, ¶ 15).) Fannie Mae also points out that Singer has no recollection of receiving the notice of default. (*Id.* at 22 (citing Pl.'s Dep., ECF No. 42-50, at 107:19–109:25).) For his part, Singer submitted a copy of an attorney affirmation filed in the 2013 Action on behalf of OneWest, stating that OneWest first sent Singer a notice of default on July 30, 2009, "in accordance with the mortgage." (Loretta Carty Aff., ECF No. 40-4; *see also* Pl.'s Reply, ECF No. 40, at 7–8.)

Assuming without deciding that the 2009 notice of default somehow failed to comply with paragraph 22 of the Mortgage, the Court nevertheless recommends finding that the mortgage was validly accelerated. The Court is persuaded here by the Second Department's reasoning in *Everhome Mortg. Co. v. Aber*, 151 N.Y.S.3d 55, 61 (N.Y. App. Div. 2d Dep't 2021). As in that case, paragraph 22 of the Mortgage constitutes "a contractual condition precedent inserted in the contract solely for the benefit of the borrower, as it gives the borrower additional time to make installment payments before the lender may accelerate the mortgage debt." *Id.* (citation omitted). Therefore, given that compliance with paragraph 22 was intended to be "enforceable and waivable only by the borrower," Fannie Mae's "belated attempt to take advantage of [OneWest's] potential breach of paragraph 22[] . . . must not be condoned." *Id.* (citations omitted).

In addition, unlike in *U.S. Bank Nat'l Ass'n v. Hazan*, 109 N.Y.S.3d 646 (N.Y. App. Div. 1st Dep't 2019), the New York Supreme Court here "did not invalidate [OneWest]'s election to accelerate the mortgage debt on that basis [i.e., failure to comply with mortgage notice requirements], since it directed dismissal of the complaint based upon [OneWest]'s failure to" meet a court deadline. *Aber*, 151 N.Y.S.3d at 61. (*See also* Aug. 14, 2012 State Court Order, ECF No. 41-10.) Therefore, the "2009 acceleration of the mortgage debt was neither invalidated by the court nor revoked by the [lender]," but instead, is now being belatedly raised by Fannie Mae to attempt to generate a dispute of fact. *Aber*, 151 N.Y.S.3d at 61; *see also 1042 II Realty, Inc.*, 2022 WL 280882, at *3.

Significantly, neither party disputes that OneWest "elect[ed] to call due the entire amount secured by the mortgage" in the 2009 Action. (2009 Summons and Complaint, ECF No. 41-8, ¶ 7.) This clear indication in the complaint is sufficient to show that the mortgage debt was validly accelerated. *See, e.g.*, *53rd St., LLC*, 8 F.4th at 78 ("Where acceleration of a mortgage debt upon default is made optional with the holder of the

note and mortgage, the debt may be accelerated by the mortgagee's taking of some affirmative action . . . evidencing the holder's election to take advantage of the accelerating provision." (quotation marks and citation omitted)); *Scarso v. Wilmington Sav. Fund Soc'y, FSB*, 159 N.Y.S.3d 477, 479 (N.Y. App. Div. 2d Dep't 2021) ("[T]he homeowners established that the mortgage debt was accelerated when [the noteholder] commenced the 2009 action and elected in the complaint to call due the entire amount secured by the mortgage."); *see also Engel*, 37 N.Y.3d at 25 ("It is well-settled that the filing of a verified foreclosure complaint may evince an election to accelerate." (citing *Albertina Realty Co. v. Rosbro Realty Corp.*, 258 N.Y. 472, 476 (1932))).

Fannie Mae cites to *Avail Holding LLC v. Ramos* to suggest that it is Singer's burden to demonstrate that OneWest "had the authority to accelerate the debt or to sue to foreclose at that time." No. 19-CV-117 (BMC), 2019 WL 6498170, at *3 (E.D.N.Y. 2019) (quotation marks omitted). (*See* Def's Mem., ECF No. 42, at 21.) But in that case, the court found that because the complaint in the foreclosure action "expressly stated that [the noteholder] 'hereby elects to call due the entire amount secured by the mortgage,'" there was a "'clear and unequivocal' acceleration notice." *Avail Holding LLC*, 2019 WL 6498170, at *3. Moreover, the court found that there was no genuine dispute about whether the noteholder had the authority to accelerate the debt when "both the mortgage and the note instrument permit[ted] the noteholder to demand the full amount of principal and outstanding interest upon the mortgagor's default." *Id.* ("Therefore, so long as [the lender] was the noteholder on [the date the complaint was filed], the acceleration notice within its complaint was valid, triggering the start of the statute of limitations period on that date."); *see also Fed. Nat'l Mortg. Ass'n v. Schmitt*, 99 N.Y.S.3d 717, 719 (N.Y. App. Div. 2d Dep't 2019) ("There is no evidence in this record that OneWest Bank lacked standing to commence the 2010 action.").

Therefore, the Court respectfully recommends finding that there are no material facts in dispute as to whether "the commencement of the 2009 action accelerated the mortgage and started the running of the statute of limitations." *U.S. Bank Tr., N.A., as Tr. for LSF9 Master Participation Tr. v. Adhami*, No. 18-CV-530 (PKC) (AKT), 2019 WL 486086, at *4 (E.D.N.Y. Feb. 6, 2019); *see also 1042 II Realty, Inc.*, 2022 WL 280882, at *4.

## 2. Singer's Statements Regarding the Mortgage Debt

Fannie Mae next argues that even if OneWest validly accelerated the Mortgage through foreclosure proceedings, Singer renewed the statute of limitations by acknowledging and evidencing his intent to repay the mortgage debt. (Def.'s Mem., ECF No. 42, at 10–16.) Specifically, Fannie Mae claims that Singer did so via (1) his answer filed in the 2013 Action; (2) his statements in the Templer Action; and (3) "in a series of letters, e-mails, applications to workout his Mortgage debt, telephone calls and other financial documents he submitted to the servicer of the Fannie Mae's Mortgage to try and make a deal." (*Id.* at 11.)

Fannie Mae's argument relies upon both New York General Obligations Law §§ 17-101 and 17-105(1). Section 17-101 provides:

> An acknowledgment or promise contained in a writing signed by the party to be charged thereby is the only competent evidence of a new or continuing contract whereby to take an action out of the operation of the provisions of limitations of time for commencing actions under the civil practice law and rules other than an action for the recovery of real property. This section does not alter the effect of a payment of principal or interest.

N.Y. Gen. Oblig. L. § 17-101. Section 17-105(1), in turn, is titled, "Promises and waivers affecting the time limited for action to foreclose a mortgage," and states that:

> [A] promise to pay the mortgage debt, if made after the accrual of a right of action to foreclose the mortgage and made . . . by the express terms of a writing signed by the party to be charged is effective . . . to make the time

limited for commencement of the action run from the date of the waiver or promise.

N.Y. Gen. Oblig. L. § 17-105(1).

Following the filing of Singer's motion, the New York Court of Appeals clarified that "General Obligations Law § 17-105, by its express terms, is the sole statute governing the tolling or revival of the statute of limitations for an action to foreclose a mortgage." *Batavia Townhouses, Ltd. v. Council of Churches Hous. Dev. Fund Co., Inc.*, No. 45, 2022 WL 1631492, at *2 (N.Y. May 24, 2022). The court reached this conclusion, in part, because "section 17-101 excludes itself — and by implication its allowance for a mere acknowledgment to toll or revive the statute of limitations — because it indicates that it does not apply to 'actions for the recovery of real property.'" *Id.* (quoting N.Y. Gen. Oblig. L. § 17-101); *see also Batavia Townhouses, Ltd. v. Council of Churches Hous. Dev. Fund Co., Inc.*, 133 N.Y.S.3d 133, 137 (N.Y. App. Div. 4th Dep't 2020) (summarizing the legislative history of N.Y. Gen. Oblig. L. § 17-105). As a result, Singer "could only toll or revive the statute of limitations for [Fannie Mae] to bring a foreclosure action if [Singer] made an 'express' 'promise to pay the mortgage debt.'" *Batavia Townhouses, Ltd.*, 2022 WL 1631492, at *3 (quoting N.Y. Gen. Oblig. L. § 17-105(1)).

Nothing Fannie Mae points to in the record creates a genuine dispute of fact as to whether Singer made an express, written promise to pay the mortgage debt during the relevant six-year period, calculated from either the commencement of the 2009 or 2013 actions. (*See* Def.'s Mem., ECF No. 42, at 11–14.) At most, the record shows that Singer acknowledged the existence of the Mortgage and explored options to settle the debt. (*See, e.g.*, ECF Nos. 42-11, 42-13 (proposing conditional settlement offers); Pl.'s Templer Aff., ECF No. 42-45, ¶¶ 4, 6 (attesting that Singer has "a mortgage against the property" and observing that satisfying the Templer judgment would not generate a surplus

20

because "the amount owed to the lender far exceeds the value of the property"); Loll Aff., ECF No. 42-2, ¶¶ 24–29.) Accordingly, the Court recommends finding that Fannie Mae has failed to raise a genuine issue for trial regarding whether Singer renewed the statute of limitations through his words or actions.

        3.   <u>Status of the 2009 Action</u>

Finally, Fannie Mae maintains that the 2009 Action remains pending and therefore "Singer cannot prove that the statute of limitations period has expired to foreclose the Mortgage." (Def.'s Mem., ECF No. 42, at 23–26.) In response, Singer argues that "the time to vacate the order dismissing the 2009 Action expired on August 14, 2013, one year after [the order] was sent to [Fannie Mae]'s predecessor in interest in the 2009 Action." (Pl.'s Mem., ECF No. 41-1, at 13; *see also* Pl.'s Reply, ECF No. 40, at 10–11.)

As discussed above, Fannie Mae sought to vacate the state court's 2012 dismissal and to restore the 2009 Action *after* Singer had already initiated this quiet title action. (*See* Def.'s 56.1 Counterstatement, ECF No. 42-3, ¶ 7; Def.'s State Court Mot., ECF No. 42-30; Def.'s Pre-Mot. Conf. Letter, ECF No. 49, at 2–3.) Thereafter, while Singer's motion for summary judgment was pending, Judge Knipel summarily denied Fannie Mae's motion to vacate the 2012 dismissal and noted that the underlying action was dismissed nearly ten years ago. (*See* July 7, 2022 State Court Order, ECF No. 55-1 ("Motion to vacate the 2012 dismissal is <u>denied</u> on both the law of the case & la[]ches grounds." (emphasis in original)).) Further, in denying Fannie Mae's motion to vacate the July 19, 2022 order regarding its request to stay Singer's action under the *Colorado River* doctrine, Judge Komitee aptly observed that "it is far from clear that the appeal will be successful — let alone that the relief [Fannie Mae] seeks in state court will ultimately be forthcoming." (July 22, 2022 Order, ECF No. 58, at 3.) Nevertheless, because Fannie Mae has appealed from the July 7, 2022 state court order, it attempts to

argue that "the state court foreclosure action remains pending and unresolved."[11]
(Def.'s Mot. to Vacate, ECF No. 56; *see also* July 20, 2022 State Court Appeal, ECF No. 56-1.)

Fannie Mae's argument is unconvincing. When Singer commenced this quiet title action in the New York State Supreme Court in 2019, the 2009 Action was not "pending" or "unresolved." Put another way, when Singer filed the instant case, "the period allowed by the applicable statute of limitation for the commencement of an action to foreclose a mortgage . . . ha[d] expired." RPAPL § 1501(4). Unlike in *Gustavia Home LLC v. VVS1 Corp.*, for example, where the plaintiff initiated a quiet title action shortly after purchasing the property in question, Singer is not attempting to "sneak in through the window created by a pending appeal to nullify [a lender]'s rights to the Property." No. 17-CV-4330 (ERK) (JO), 2019 WL 2527291, at *5 (E.D.N.Y. June 19, 2019). Similarly, in *Windward Bora, LLC v. Bank of New York Mellon*, the plaintiff commenced a quiet title action nine days after the state court denied the noteholder's motion to reinstate the foreclosure action, but prior to the subsequent appeal. *See* Complaint ¶ 15, *Windward Bora, LLC v. Bank of New York Mellon*, No. 19-CV-858 (RPK) (RML) (E.D.N.Y. Feb. 13, 2019), ECF No. 1. In this case, in contrast, Fannie Mae seeks to preclude summary judgment as it tries to reopen a foreclosure action initiated by a predecessor

---

[11] The Court notes that Fannie Mae's position is not entirely without support. For instance, Fannie Mae cites to the Second Department's decision in *Mizrahi v. US Bank, Nat'l Ass'n*, 64 N.Y.S.3d 572 (N.Y. App. Div. 2d Dep't 2017). (*See* Def.'s Mem., ECF No. 42, at 25 n.22; Def.'s Mot. to Vacate, ECF No. 56.) In *Mizrahi*, the court found that a foreclosure action initiated in 2008 was still pending based on "evidence demonstrating that [the lender] had appealed from an order denying that branch of its motion which was to vacate the November 2012 order dismissing the foreclosure action." *Mizrahi*, 64 N.Y.S.3d at 573; *see also Gustavia Home LLC v. VVS1 Corp.*, No. 17-CV-4330 (ERK) (JO), 2019 WL 2527291, at *3 (E.D.N.Y. June 19, 2019) (observing that "an ongoing timely foreclosure action precludes commencement of a quiet title action"), *aff'd*, 805 F. App'x 82 (2d Cir. 2020) (summary order). *Cf. Windward Bora, LLC v. Bank of New York Mellon*, No. 19-CV-858 (RPK) (RML), 2020 WL 7042761, at *4 (E.D.N.Y. Nov. 30, 2020) (granting a discretionary stay of plaintiff's quiet title action because an appeal was pending).

in interest almost a decade after it was dismissed and only after Singer moved to quiet title.

In *Engel*, the New York Court of Appeals described "a noteholder's election to accelerate the entire debt" as a "significant event for statute of limitations purposes." *Engel*, 37 N.Y.3d at 21–22. Here, OneWest elected to initiate this significant event as to the Mortgage, and that decision bears consequences. Accordingly, at least in this case, the Court recommends concluding that Fannie Mae has failed to raise a genuine issue of fact as to the relevant statute of limitations.

*   *   *   *   *

In summary, despite Fannie Mae's contentions, Singer has established that there are no material facts genuinely in dispute with respect to whether he is the current owner of the Property, whether Fannie Mae is the current noteholder, whether OneWest accelerated the mortgage debt in the 2009 Action, or whether the statute of limitations to initiate a foreclosure action has expired. Therefore, for the reasons discussed above, the Court respectfully recommends finding that Singer is entitled to summary judgment on his claim requesting that the Mortgage encumbering the Property be discharged. *See, e.g.*, *Avail Holding LLC*, 2019 WL 6498170, at *5; *128 Skillman St. 4A, LLC v. Nationstar Mortg., LLC*, 147 N.Y.S.3d 670, 672 (N.Y. App. Div. 2d Dep't 2021); *Persaud v. U.S. Bank Nat'l Ass'n*, 150 N.Y.S.3d 615, 617 (N.Y. App. Div. 2d Dep't 2021).

23

### E.  Fannie Mae's Affirmative Defenses and Counterclaims

As noted above, Fannie Mae asserted thirteen affirmative defenses and five counterclaims in its answer.[12] (Answer and Counterclaims, ECF No. 6, ¶¶ 25–72.) In addition to filing an answer to Fannie Mae's counterclaims, Singer addressed each affirmative defense individually as part of his memorandum in support of his motion for summary judgment. (*See* Pl.'s Answer to Counterclaims, ECF No. 9; Pl.'s Mem., ECF No. 41-1, at 15–24.)

For Fannie Mae's affirmative defenses pertaining to loan acceleration, the relevant statute of limitations, and whether Singer states a claim upon which relief may be granted, such defenses are "subsumed" in the Court's discussion above, and do not defeat Singer's motion. *Costa*, 247 F. Supp. 3d at 353 n.16; *see also E. Sav. Bank, FSB v. Johnson*, No. 13-CV-6070 (AMD) (SLT), 2022 WL 877781, at *4 (E.D.N.Y. Jan. 31, 2022). *Cf. Nat'l Enterprises Inc. v. New England Dev. II, Inc.*, 198 F.3d 234 (2d Cir. 1999) (finding that the district court was "correct in entering summary judgment in favor of the plaintiff" where "[e]ssentially all of the defendants' affirmative defenses . . . [we]re variations on the arguments presented and rejected above"). As to any affirmative defenses not so subsumed, the undersigned recommends finding that Fannie Mae has "abandoned these defenses, on account of nowhere substantively arguing them in their briefing nor raising an underlying genuine dispute of material fact." *Costa*, 247 F. Supp.

---

[12] Fannie Mae's affirmative defenses assert, in sum and substance, that: (1) the subject loan was never accelerated; (2) to the extent the loan was accelerated, the statute of limitations was tolled and also renewed by Singer's reaffirmation of the debt; (3) Singer is precluded from arguing that the statute of limitations expired due to estoppel, unclean hands, waiver, res judicata, and laches; (4) Singer fails to state a claim upon which relief may be granted; (5) Singer's claims are barred by the doctrines of ratification and unjust enrichment; and (6) Fannie Mae is entitled to an equitable lien. (Answer and Counterclaims, ECF No. 6, ¶¶ 25–37.) Relatedly, Fannie Mae's five counterclaims are for: (1) unjust enrichment; (2) declaration of an equitable mortgage; (3) declaration of an equitable lien; (4) constructive trust; and (5) equitable subrogation. (*Id.* ¶¶ 38–72.)

3d at 353 n.16; *see also Wilmington Tr., Nat'l Ass'n v. Winta Asset Mgmt. LLC*, No. 20-CV-5309 (JGK), 2022 WL 2657166, at *7 (S.D.N.Y. July 8, 2022); *CIT Bank N.A. v. Elliott*, No. 15-CV-4395 (JS) (ARL), 2018 WL 1701947, at *10 (E.D.N.Y. Mar. 31, 2018); *Onewest Bank, N.A. v. Rosado*, No. 14-CV-9917 (LGS), 2016 WL 3198305, at *4 (S.D.N.Y. June 7, 2016).

With respect to Fannie Mae's counterclaims, the Court concludes that they are beyond the scope of this motion. Fannie Mae argues that "Singer has not moved to dismiss, or for summary judgment on any of Fannie Mae's five counterclaims," and that this action must proceed to trial "regardless" of the disposition of Singer's summary judgment motion. (*See* Def.'s Mem., ECF No. 42, at 1 n.1, 9 n.8.) Singer does not specifically address the counterclaims and offers no response to this argument. (*See generally* Pl.'s Mem., ECF No. 41-1; Pl.'s Reply, ECF No. 40.) *Cf. Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 324–25 (S.D.N.Y. 2017).

## CONCLUSION

For the reasons discussed above, the Court respectfully recommends that Singer's motion for summary judgment (ECF No. 41) be granted and Singer's motion to strike (ECF No. 44) be denied.

\*    \*    \*    \*    \*

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen days. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g., Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that

"failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

      **SO ORDERED.**

Dated:  Brooklyn, New York
       August 11, 2022

                                _Taryn A. Merkl_
                                  _____
                                  TARYN A. MERKL
                                  UNITED STATES MAGISTRATE JUDGE