```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 SOLOMON SINGER,

                        Plaintiff,           MEMORANDUM & ORDER
                                             19-CV-5992 (EK)(TAM)

          -against-

 FEDERAL NATIONAL MORTGAGE
 ASSOCIATION,

                        Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

        Solomon Singer borrowed money to purchase a home in Brooklyn in 2006. The initial lender sold the mortgage, which passed through several hands before the Federal National Mortgage Association ("Fannie Mae") acquired it. Singer brought this action to discharge that mortgage as time-barred under the New York Real Property Law. Magistrate Judge Merkl recommended that the mortgage be discharged, given that the statute of limitations to initiate a foreclosure action had expired. In an order dated October 2022, this Court adopted that recommendation.

        Fannie Mae also asserted two counterclaims, however, which remain pending. First, it brought an unjust-enrichment claim to recover tax and insurance payments it made on the property after Singer defaulted, but within the six-year

limitations period set out by the New York Real Property Law. Second, it sought an equitable lien on the property equal to the value of those tax and insurance payments.

Singer now moves for summary judgment on those counterclaims on the basis that (1) New York law precludes an unjust enrichment claim in these circumstances, and (2) Fannie Mae's failure to pursue its legal remedies under the mortgage agreement bars it from obtaining an equitable lien. For the following reasons, that motion is granted.

## I. Background

The following facts are drawn from the parties' submissions in connection with the motion for summary judgment, including the parties' Local Rule 56.1 Statements. The Court views the facts in the light most favorable to Fannie Mae, which is the non-moving party. Citations to a party's Rule 56.1 statement incorporate by reference the documents cited therein.

**A.   The Mortgage History and State-Court Proceedings**

Singer borrowed money from Fairmont Funding — which is not a party to this case — to buy the property at issue, which is located on Walsh Court. Pl.'s Rule 56.1 Statement ¶ 1 ("Pl.'s 56.1"), ECF No. 87-3. In 2009, after Singer failed to make the required payments, OneWest Bank — the new owner of the mortgage — filed a foreclosure action in New York State Supreme Court. *Id.* ¶ 4; *see also* Notice of Default 3, ECF No. 87-8.

The state court twice dismissed that action on procedural grounds. Pl.'s 56.1 ¶¶ 6-8.

In 2015, OneWest assigned the mortgage to Fannie Mae. *Id.* ¶ 11. Since 2009, the mortgage owners (including Fannie Mae) have paid real estate taxes and casualty insurance premiums on the property. A.J. Loll Aff. ¶¶ 15, 17 ("Loll Aff."), ECF No. 88-2. It is these payments that Fannie Mae now seeks to recoup through its unjust enrichment and equitable lien claims.

**B.   Proceedings in this Case**

Singer filed this action in state court, seeking to discharge the mortgage at issue. Pl.'s 56.1 ¶ 14. Fannie Mae removed to this Court in October 2019. *Id.* ¶ 15. It then filed the counterclaims at issue. By way of remedies, Fannie Mae is seeking to recover all tax and insurance payments made within the six-year statute of limitations.

Singer then filed his first motion for summary judgment, in which he sought a judgment discharging the mortgage. ECF No. 41-1. This Court referred that motion to Judge Merkl. Judge Merkl recommended finding that (i) Singer is the current owner of the property, (ii) Fannie Mae held the note in question, (iii) OneWest had accelerated the mortgage debt in the 2009 state action, and (iv) pursuant to that acceleration, the six-year statute of limitations to initiate a foreclosure action had expired. *See* Report & Recommendation 23 ("R&R"), ECF

3

No. 59.  On this basis, Judge Merkl recommended that Singer's motion for summary judgment be granted.  *Id.*  This Court adopted the R&R in its entirety.  ECF No. 67.

Singer now moves for summary judgment on Fannie Mae's counterclaims.  At oral argument, Fannie Mae stipulated to the dismissal of its claim for the declaration of an equitable mortgage.  *See* Oral Arg. Tr. 36:5-12, ECF No. 95.  Thus, only its claims for unjust enrichment and the declaration of an equitable lien remain.

## II.  Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact" and that he "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that "can affect the outcome under the applicable substantive law."  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).[1]  A genuine dispute is one that can "reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  In performing this analysis, the court must resolve all ambiguities and draw all inferences in favor of the non-moving party.  *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994).  "If, in this generous light, a material

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

4

issue is found to exist, summary judgment is improper." *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n*, 182 F.3d 157, 160 (2d Cir. 1999).

The moving party may establish that there is no genuine dispute "by showing that little or no evidence may be found in support of the nonmoving party's case." *Gallo*, 22 F.3d at 1223-24 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the moving party meets this burden, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). If "no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Id*.

### III. Discussion

**A.   Unjust Enrichment**

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that equity

and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000).

1. The existence of the written mortgage agreement precludes the unjust enrichment claim

By its unjust enrichment claim, Fannie Mae seeks to recover the tax and insurance payments it made on the property after Singer defaulted. New York law bars this claim.

Unjust enrichment is "an obligation the law creates in the absence of any agreement." *Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005). Therefore, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987); *see also Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) (New York law "precludes unjust enrichment claims whenever there is a valid and enforceable contract governing a particular subject matter").

Here, the mortgage agreement between the parties squarely covers the subject of this dispute. That contract said that Singer would "pay to Lender all amounts necessary to pay for taxes, assessments . . . hazard or property insurance covering the Property, flood insurance (if any), and any

6

required mortgage insurance." Mortgage Contract 8, ECF No. 87-5. It also provided that, if Singer failed to maintain insurance coverage on the property, the lender could "obtain insurance coverage, at Lender's option and expense," which would become Singer's "additional debt secured by this Security Instrument." *Id.* at 9.

In a recent case, the Second Department held that a similar agreement barred an unjust-enrichment claim. In *Auquilla v. Villa*, the court affirmed the trial court's cancellation and discharge of a mortgage. 233 N.Y.S.3d 79, 88 (2d Dep't 2025). It then went a step further, and directed the trial court to enter summary judgment for the mortgagor on the mortgagee's unjust-enrichment counterclaim. *Id.* at 92. The counterclaim in question was, like this one, predicated on payments the mortgagee had made to preserve the property after the mortgagor abandoned it. *Id.* at 89. Citing *Clark-Fitzpatrick*, the Second Department concluded that because the mortgage agreement governed the mortgagee's right to make those payments, the mortgagee could not recover them in a quasi-contract action. *Id.*

A federal court in this district, too, reached a similar conclusion in a case closely resembling this one. In *839 Cliffside Ave. LLC v. Deutsche Bank National Trust Co.*, the plaintiff sought to discharge a mortgage lien on a residential

7

property. No. 15-CV-4516, 2018 WL 4608198, at *1 (E.D.N.Y. Sept. 25, 2018). The bank countersued, seeking foreclosure and other relief. *Id.* After the bank's counterclaim for foreclosure was dismissed as time-barred, *id.* at *3, the parties cross-moved for summary judgment on the bank's unjust-enrichment counterclaim, which sought recovery of payments "made for taxes, insurance, and water." *Id.* at *11. The court granted summary judgement against the bank because it was "indisputable that the Mortgage governs the matter in dispute, namely, the payments Defendant made for taxes, insurance, and water on the Subject Property." *Id.* at *12.

The logic of *Auquilla* and *839 Cliffside* applies with equal force here. Fannie Mae acknowledges as much, but contends that *839 Cliffside* was wrongly decided. (*Auquilla* was published after briefing in this case concluded, so Fannie Mae's brief does not address that case.) In support, Fannie Mae cites *Federal National Mortgage Association v. Mebane*, 208 A.D.2d 892 (2d Dep't 1994). There, the Second Department held that the bank-plaintiff's foreclosure action was time-barred, *id*. at 894, but went on to state that "contrary to the borrowers' contention, [the bank-plaintiff] stated a valid cause of action sounding in unjust enrichment to recover sums advanced, inter alia, for property taxes and insurance, within the six-year

8

period prior to the commencement of this action." *Id.* at 894-95.

As an initial matter, the Second Department's more recent decision in *Auquilla* squarely undercuts Fannie Mae's reliance on *Mebane*. But just as importantly, *Mebane* contains no substantive analysis. Unlike *Auquilla*, it does not mention, let alone engage with, New York's settled rule that claims for unjust enrichment cannot succeed where a contract governs "the same subject matter." *Clark-Fitzpatrick*, 516 N.E.2d at 193. Moreover, Fannie Mae did not actually *prevail* on its unjust enrichment claim in *Mebane*. Instead, all the Appellate Division actually did was modify the lower court's order to allow the bank leave to amend its complaint to *plead* such a claim. And as Singer points out, the bar for granting leave to amend in New York was extremely low at the time. *E.g.*, *DeGuire v. DeGuire*, 125 A.D.2d 360, 360 (2d Dep't 1986) ("[G]enerally the merits of a proposed amended complaint will not be examined on a motion for leave to amend.").[2]

---

[2] Indeed, in the Second Department, courts were not required to undertake *any* assessment of the merits before granting leave to amend. "The legal sufficiency or merits of a proposed amendment to a pleading [would] not be examined unless the insufficiency or lack of merit [was] clear and free from doubt." *Sample v. Levada*, 8 A.D.3d 465, 467-68 (2d Dep't 2004); *see also Lucido v. Mancuso*, 49 A.D.3d 220, 227 (2d Dep't 2008) (applicable precedent "make[s] clear that a plaintiff seeking leave to amend the complaint is not required to establish the merit of the proposed amendment in the first instance").

9

When applying state law, federal district courts "are not strictly bound by state intermediate appellate courts." *DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005). At the same time:

> Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*West v. AT&T*, 311 U.S. 223, 237 (1940). Here, considering the limitations discussed above, *Mebane* cannot be read to set forth a "considered judgment" on this question. Having mentioned the issue only in passing, it provides little if any data to support a prediction that the New York Court of Appeals would discard the rule of *Clark-Fitzpatrick* in this setting. *See Phansalker v. Andersen Weinroth & Co.*, 344 F.3d 184, 199 (2d Cir. 2003) ("[W]e must give fullest weight to the decisions of a state's highest court.").

2. Fannie Mae's expenditures were not made for <u>Singer's benefit</u>

Fannie Mae's unjust enrichment claim fails for a second reason: the company made the insurance and tax payments voluntarily. Every court to decide the issue has held that the voluntary-payment doctrine bars claims by a mortgage holder to recover such payments after a borrower defaults. In New York, "the voluntary payment doctrine . . . bars recovery of payments

10

voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." *Dillon v. U-A Columbia Cablevision of Westchester*, 790 N.E.2d 1155, 1156 (N.Y. 2003).

Indeed, New York courts have held that the voluntary-payment doctrine bars a counterclaim for unjust enrichment in cases like this one. In *Clark v. Daby*, the plaintiff brought an action to foreclose the mortgage on defendant's property, but the Supreme Court discharged the mortgage as usurious. 300 A.D.2d 732, 732 (3d Dep't 2002). While the appeal was pending in that foreclosure action, the plaintiff paid property taxes on the property to prevent an impending tax sale. *Id.* When leave to appeal was denied, plaintiff sued to recover for its tax payments under a theory of unjust enrichment. *Id.* On summary judgment, the Third Department affirmed dismissal of the unjust-enrichment claim, holding that it was barred by the voluntary-payment doctrine because the plaintiff's "sole motivation in making the payment was to protect their own interests." *Id.* at 733. "The fact that plaintiffs' calculated risk failed makes their conduct no less voluntary, and there is no evidence or claim that defendant's conduct with regard to this matter was in any way tortious or fraudulent." *Id.*

The Second Department reached a similar conclusion in a more recent case. In *Wells Fargo Bank, N.A. v. Burke*, the

11

plaintiff bank had initiated three foreclosure actions — each unsuccessful. 155 A.D.3d 668, 668 (2d Dep't 2017). The third action was dismissed as time-barred. *Id.* at 668-69. The bank then filed an unjust-enrichment action to recover "the amount of real property taxes and hazard insurance premiums" it had paid during the defendant's default. *Id.* at 669. Following *Clark*, the Second Department held that the unjust enrichment claim was barred. The bank's payments were "a voluntary, calculated risk to protect the plaintiff's interest in the property while it continued to litigate the validity of the mortgage, rather than the product of mistake or fraud." *Id.* at 671. Thus, the voluntary-payment doctrine foreclosed relief for the bank.

Federal case law is in accord. In *Costa v. Deutsche Bank*, the Southern District held that the voluntary-payment doctrine barred a counterclaim for unjust enrichment in circumstances like those present here. 247 F. Supp. 3d 329 (S.D.N.Y. 2017). There too, the plaintiffs sought to discharge a mortgage because — following acceleration of the repayment schedule pursuant to an unsuccessful state court foreclosure action — the statute of limitations had run. *Id.* at 333. The court granted summary judgment and discharged the mortgage. *Id.* at 353. The defendants — Deutsche Bank, which held the loan, and the loan servicer — counterclaimed for unjust enrichment,

12

seeking to recover for payments they made towards taxes, insurance premiums, and related charges. *Id.* at 336, 353.

The *Costa* court held that the voluntary-payment doctrine applies even when the outlay of money by the paying party (that is, the bank) benefits the opposing party (the borrower) as well. Quoting a Second Circuit ruling, the *Costa* court held that an incidental benefit to the borrower is not enough under New York law. Instead, the bank had the "burden to demonstrate that services were performed *for the* [borrower] resulting in the latter's unjust enrichment." *Id.* at 354 (quoting *Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A.*, 481 F. App'x 622, 627 (2d Cir. 2012) (emphasis in original)). The court therefore dismissed the counterclaim on summary judgment, because the evidence adduced showed only that the defendants "took a calculated risk" by continuing to make payments to preserve the mortgaged property's value. *Id.* at 355. If that risk turned out to "have been a losing gamble," that did "not retroactively alter for whom that benefit was intended." *Id.*

Fannie Mae argues that these cases were all wrongly decided. But they are persuasively reasoned, and Fannie Mae cites no decisions (from a New York State court or otherwise) that arrive at the opposite conclusion on analogous facts. Fannie Mae also attempts to distinguish these cases on the creative — but attenuated — basis that none of them stated

13

explicitly whether the payments at issue were made pursuant to an escrow agreement.[3] The escrow arrangement — present in the instant case — would change the outcome, Fannie Mae says, because under such an agreement, "the borrower gets the benefit of paying [twelve] even installments," after which the lender "makes one lump sum payment" for taxes and insurance. Oral Arg. Tr. 31:12-15. In Fannie Mae's view, this structure smooths the borrower's payment schedule and obviates the need for him to make separate tax and insurance payments. *Id.*

The fact that Singer's mortgage made use of an escrow account is insufficient to demonstrate that Fannie Mae made the tax and insurance payments for Singer's benefit rather than its own. For one thing, the relevant question under the voluntary-payment doctrine is whether *payments* benefitted Singer — not whether the method of *delivering* those payments benefitted him. And here, as a Fannie Mae employee acknowledged, the "real estate taxes were paid to prevent a lien from arising that may have priority over the Mortgage." Loll Aff. ¶ 16. Thus, the payments benefitted Fannie Mae by preserving the value of the property and minimizing the risk of a tax lien that would be superior to Fannie Mae's interest in the property.

---

[3] As Fannie Mae's counsel acknowledged at oral argument, however, the vast majority of mortgages in the United States — like the mortgage at issue here — are escrow mortgages. Oral Arg. Tr. 32:20-22.

14

Moreover, even if a mortgage contract's contemplated payment structure were relevant to the unjust-enrichment analysis, the escrow agreement also protected Fannie Mae's interests. Federal regulations — specifically, the Consumer Financial Protection Bureau's Regulation X under the Real Estate Settlement Procedures Act of 1974 ("RESPA") — provide enhanced protections for *lenders* as well as borrowers under an escrow arrangement. 12 C.F.R. § 1024.17 ("Escrow Accounts"). Section 1024.17 enables lenders to charge borrowers like Singer *more* than the "total annual escrow payments" in order to "maintain a cushion no greater than one-sixth (1/6) of the estimated total annual payments from the account." *Id.* Lenders may also "require the borrower to pay additional monthly deposits" to eliminate any "deficienc[ies]" in the account's balance. *Id.*

Singer's motion for summary judgment on Fannie Mae's counterclaim for unjust enrichment is therefore granted, and the claim is dismissed.

**B.   Declaration of an Equitable Lien**

Singer also moves for summary judgment on Fannie Mae's claim seeking a declaration of an equitable lien on the premises in the amount of the taxes and insurance paid within the six-year statute of limitations. He is entitled to summary judgment on this claim too.

15

"An equitable lien is a right to charge specific property or its proceeds with the payment of a particular debt." *Reisner v. Stoller*, 51 F. Supp. 2d 430, 453 (S.D.N.Y. 1999). "New York law allows the imposition of an equitable lien if there is an express or implied agreement that there shall be a lien on specific property. Such an agreement must evince a sufficiently clear intent that the property is to be held, given or transferred as security for the obligation." *M&B Joint Venture, Inc. v. Laurus Master Fund, Ltd.*, 907 N.E.2d 690, 692 (N.Y. 2009). Importantly, however, a court may not impose an equitable lien to permit a mortgagee to recover funds it had the opportunity to obtain under the terms of a written mortgage agreement. *Auquilla*, 233 N.Y.S.3d at 93.

*Auquilla* is on-point. In that case, the Second Department concluded that a mortgagee was not entitled to an equitable mortgage where, as here, the mortgagee had twice failed to enforce its rights under the original written mortgage agreement in a timely manner. 233 N.Y.S.3d at 92-93. The appellate court then applied similar logic to the mortgagee's counterclaim for an equitable lien, noting that such a lien was "simply an equitable mortgage . . . by another name." *Id.* at 93. Because an equitable lien would "essentially be enforced the same way as an equitable mortgage, *i.e.*, through foreclosure on the property," the court found that permitting an equitable

16

lien would not advance the principles of equity, and therefore granted summary judgement to the mortgagor.  I*d.*

This case closely resembles *Auquilla*.  The parties had a written mortgage agreement.  *See generally* Mortgage Contract.  Fannie Mae twice failed to enforce its rights under that contract in state court, Pl.'s 56.1 ¶¶ 6-8, and the Court eventually found that Fannie Mae's foreclosure action was time-barred.  ECF No. 67.  Fannie Mae now attempts to approximate the outcome it could not achieve at law by seeking an equitable lien.  This is not permissible under New York law.  *Auquilla*, 233 N.Y.S.3d at 93.  The parties have not surfaced, and the Court's own research has not identified, any New York authority that would undermine this result.

Accordingly, Singer's motion for summary judgment on Fannie Mae's counterclaim for an equitable lien is granted.

## IV.  Conclusion

For the foregoing reasons, Singer's motion for summary judgment on Fannie Mae's counterclaims is granted.  The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

17

    /s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:    September 15, 2025
              Brooklyn, New York